Argument not to exceed 15 minutes per side. Mr. Sweeney, you may proceed for the appellant. Mr. Sweeney, would you let us know how many minutes you've reserved for rebuttal, please? Yes, I will. Please, the court. Good afternoon. I'm Tim Sweeney for Christian Ferguson. And I would like to please reserve three minutes, if I could, for rebuttal. Very well. It's a pleasure to be here, as always. I represent this young man who was charged and tried for attempted kidnapping. When it never happened, never was attempted, and no true kidnapping was ever in his head at any time. It was all in the imagination of the prosecutor who had a careless concept of the crime of kidnapping and violation. Isn't it the case, though, that he had done some online speculating about doing some kidnapping? Well, I don't even think it went that far, Judge Batchelder. There was a lot of online yapping, that's for sure. A lot of big talk. Sort of an internet tough guy with this militia that he was sort of dreaming up. And I believe the evidence firmly would have established that he never would have left his couch had it not been for these two sharks that the FBI sicced on him and drew him out, drew him into these federal parks and encouraged him to recite some of these things that he ended up reciting to their hidden cameras. Did you argue entrapment at the trial? Or were you the trial counsel? No, I wasn't. Did the trial counsel argue entrapment? No. And we're not arguing entrapment here. Are you arguing entrapment? Absolutely not. He wins because they didn't prove the elements of their crime. They've got to meet the burden of proof as to both elements. In this case, attempted kidnapping, that means they've got to show specific intent. It's a specific intent crime when it's an attempt crime. You've got to show specific intent to engage in that criminal conduct. They didn't show that. They then have to show, even if they could, that he took a substantial step that was beyond, that confirmed in sort of an objective way that that specific intent was in fact in operation. Neither one of those things can be met, Your Honors, in this particular case. When you say specific intent, is that the holding requirement that you're arguing? Well, it's part of it. An attempt offense, any attempt offense, is a specific intent offense. It's not general intent. That's not the case when you're arguing somebody committed an attempt crime in federal court. You've got to show that they specifically intended to commit that crime. And here, that's attempted kidnapping, which is the underlying crime of kidnapping. And the underlying crime of kidnapping is seizure plus holding. And the holding can't be just what's normally attendant to the seizure. That's the point, I think, that that case U.S. v. Jackson made out of the Ninth Circuit, which is a 2022 case where they reversed on sufficiency of grounds an actual kidnapping, a kidnapping case in that particular instance, because there wasn't the holding that was required to establish that offense. It's got to be more than just the seizure that's attendant to any type of offense. So when you have, like in this case, at most you had guys who were talking about robbing police gear. That's what this was talking about. We're going to pull over these police cars. We're going to take their gear. We're going to send them on their way with a calling card. That's what this kid was talking about, Judge Bannon. He also talked, though, about maybe wouldn't let them live. He did say some really, really stupid things. Oh, yeah. I mean, believe me, I'm not doubting at all that he said some really stupid things. But my concern is in an attempt crime, to what extent do you have to, how close to the actual seizure, for example, do you have to come in order to show the intent? I mean, I think you have to have an intent. You have to show that there was a specific intent to commit the crime of kidnapping, which means the crime of seizing plus holding for the sufficient period of time that kidnapping requires. So if you showed that intent, which arguably some of the stuff he was talking about might show, how close to those actual things, the seizure and the holding, do you have to come for it to be an actual attempt? I think that would go into the substantial step part of the analysis. Did he take a substantial step? Respectfully, I don't agree that there's sufficient evidence of an intent. But even if you conclude that there is sufficient evidence of a specific intent to commit this kidnapping, there's no substantial step here. There's no Rubicon moment beyond which this thing was in work. This thing was all talk. It was still talk on May 8th when they were at that park. So a dry run is not a substantial step? I don't think it was a dry run. I mean, I think that's hyperbole. I don't think it was a dry run. There was no weapons. They didn't have enough people. So they couldn't have committed it that day. They didn't have any gear to commit any of this stuff. They had no intention of even bothering these two people that pulled up in the police car. I mean, those people even acknowledged, no, we didn't. I'm not even sure we even saw these kids, this kid. How do you distinguish this from that Wesley case, though? Because that was a dry run case too, wasn't it? Well, first of all, that's not a kidnapping case. That's a bank robbery case. Now, because we're in the kidnapping realm, I think you have to be sure you consider Chatwin, which is that Supreme Court authority, the U.S. Supreme Court, which says kidnappings have to be true kidnappings. So Wesley didn't involve a kidnapping case. So you don't have that layer of analysis that you've got to get through. We've got this more recent authority called Small from the Sixth Circuit, which seems to talk about, I mean, in that case, the person was just bound while the house was being robbed, right? And that was considered kidnapping? It was. But, okay, Small is an actual kidnapping. It's not an attempt crime. And Small, they were held for 25 minutes. There's no evidence here whatsoever, other than speculation, number one, that there would be any binding. So in order to attempt, have an attempt to kidnap, you have to have a specific intent to hold someone for longer than what they would have held them for in Small? Well, I think you have to satisfy the elements of kidnapping, which, as Chatwin says, this is Justice Murphy, the great former mayor of Detroit and the governor of Michigan, who said when he was sitting on the Supreme Court, it's got to be a true kidnapping. You've got to hold them for a substantial period of time. That's Small, I think. That's Small, substantial period of time, 25 minutes. They held them for 25 minutes. That's different. That's not this case. This case, you're two layers removed. Because, number one, it's speculation whether you have any holding at all. Because this is a crime about robbery. This kid is thinking, I'm going to rob the police of their gear. Okay, all right, that's the crime. Is there going to be a holding? That's total wild speculation. Will there be? If the police say, okay, take our gear, go, get out of here. There's not going to be a holding. So you're one layer of speculation when you compare it to Small. The second layer is, how long is the holding going to be for? Is it going to be for 25 minutes like it was in Small? Is it going to be a sufficient holding that satisfies the requirement that it be a true kidnapping? See, I don't think you can make that evidentiary leap in this case. They had to prove that beyond a reasonable doubt. I just think, just because you have a kid who said some really dumb things and was sort of led along by these two adults. Remember, they're two adults twice his age and him. He goes through these things and says a lot of stuff and sort of is compliant and agrees and talks a big game. But the talk all along was, okay, we're going to get these police, we're going to take their gear. Where's the proof of the holding? I mean, it might happen that way. There was no Rubicon moment that said it would have to happen that way. They weren't even prepared to go forward on May 8th. May 8th was just, let's go check out the scene. And who picked out the scene? Not this kid. The scene was picked out by the government. The National Park was picked out by the government. Let's go to the National Park, Christian. How about that idea? The phone call, that prank phone call that drew the police car to the location with the FBI agent riding in it. Who placed that call? Not Christian Ferguson. That was one of these guys who was working for the government and getting paid $3,500. When they said, and I'm moving now off of intent to substantial step, when the government agents said, let's do a dry run on this. Here's this cabin thing. Let's figure out how we do this. It's not a substantial step that he got in the car with them? I don't think so, Judge Batchelor. I really don't. I don't think there's a fragment of a crime in process at that point. They're going to check out the scene. They're going to look and see, okay, this is where we might conduct it. This is where we might do this if we ever do do it. We might do it at this abandoned house. I don't think that's a substantial step. Certainly not with respect to a kidnap. Because, again, you're two layers removed. Maybe you have a substantial step, baby step toward a robbery, but where's the substantial step toward a kidnapping? Where are you saying a substantial step would have occurred? How far did he need to go before he would make a substantial step? For an attempted kidnapping offense? I think you'd have to have a specific date. You'd have to have specific people in mind who you're going to kidnap. You'd have to be there with your gear. I mean, I think that's a little bit different. The Brett Kavanaugh case. The kid shows up with all the stuff and he's going to, you know, that's a little different. This case, you know, this is a big nothing. This guy, this is a big nothing. This kid was complicit in a prank phone call. So your position is for attempted kidnapping, it's not enough to plan it. You actually have to have taken some step in the actual commission of the crime. Well, not only that, Judge Bush, but your crime that you're contemplating and that you've shown a specific intent that you're going to commit must actually be a kidnapping. It can't be a robbery. You know? I mean, this wasn't a kidnapping. This kid wasn't thinking, I'm going to kidnap these guys. No. This kid was thinking, construed in the light most favorable to Matt's side of the table. Construed in the light most favorable to Matt's side of the table is, they're thinking, okay, you know, we're going to rob these police people. We're going to maybe detain them for a few minutes so we can get their gear. Then we're going to let them go with the calling card. That's not a kidnapping. So whatever his intent was, it wasn't to engage in the crime of true kidnapping, which requires significant restraint, a substantial period of time, something beyond the type of holding that would be attendant to any crime, any robbery. Any robbery is going to involve some bit of being restrained or being held. But it can't be the type of holding that's just typical of any type of crime like that. It's got to be something more than that. Well, let me ask you this. If we don't accept the first part of your premise, i.e., that the crime itself was not kidnapping, there's not intent. If we assume that there was intent for kidnapping, I realize that's not your position. Is it your position? He did a little bit more than just show up for the dry run. He had recruited someone to make the call, the real call, not the dry run call, but other call. He had two other individuals who he also had pulled in to say that on the day that we really do this, you will do it, that they would do it. And certainly he reaffirmed his intent to follow through on whatever the plot was. Is none of that enough to be a substantial step? Not here. One of those kids is 14 and lives in Tennessee, and it's all just a big bunch of nonsense. That kid's never going to be involved. He didn't recruit that kid. I mean, that's just not real. That's just talk. And talk is never, I believe, Your Honor, a substantial step. And that's the facts of this case. I mean, maybe if the facts were different and he did recruit some guy who's going to do this, like in Wesley, he called up his buddy who was a former bank robber. Okay, that might count. But you call up some 14-year-old kid, and you're thinking of him, and he's going to drive the getaway car. I mean, it's laughable. I mean, come on. This isn't serious stuff. I mean, this is not a substantial step. He didn't recruit anybody. It was all talk. And big talk doesn't make you a federal felon for the rest of your life. Okay. Do you all have any other questions? Okay. Thank you, Mr. Fleming. Thank you. Good afternoon. May it please the Court, Matthew Call for the Government. The evidence proved that the defendant had the intent to kidnap federal law enforcement officers, developed a plan to do it, and took steps in furtherance of that plan. What is the, when you say the evidence proves that the intent was to kidnap, point me to the actual kidnapping intent. If you look at Exhibits 209 and 210, he describes his plan to the informants. They're Appendix 75 to 80, in that range. He specifically says that he's going to lure police officers out to a location. That's the first element of kidnapping. It doesn't necessarily, kidnapping doesn't necessarily have to begin with a seizure. It can begin by convincing someone to come out there, to inveigle them, to decoy them, to bring them to a location. Next, the defendant said that he wants to stop them at gunpoint. That's holding someone against their will. The defendant even takes it a step further. In Exhibit 210, he says, take their handcuffs and handcuff them both. That's a holding. And then it must be for ransom, reward, or otherwise. That's the third element of a kidnapping. Here, it's really undisputed that the defendant intended to do it for two reasons. Number one, to take their gear. Strip them of all of their possessions. That's a reward. And also, he intended to do something, and he wasn't as specific as this point, but he intended to execute this plan in order to gain publicity, or to raise publicity, and recruit people to join his burgeoning militia movement. That would be an intangible reward. So the holding was done for ransom or reward for the goods, and otherwise to promote his organization. The Supreme Court said in the Gooch case that an intangible benefit is sufficient to satisfy that otherwise element. In that case, the defendant took two, I believe it was marshals, it might have been drug agents, hostage in order to prevent him from being arrested. It was an intangible benefit to him. He took them hostage to prevent being arrested, and that was sufficient to satisfy that element. This court has said that you've got to interpret the term, or otherwise, broadly. And we believe that the purposes here would be met with this. What about the fact that it was the government's idea to do this at a national park? I don't think that was his idea, was it? We suggested the national park, Your Honor, that's correct. But if you look back, the defendant said several times that he wanted to use a remote location, an abandoned house, and the government suggested that location. The national park proximity, is that part of the elements of this federal crime? It is one of the elements. Okay, so if you have an element that the government is responsible for the reason they satisfied it, should we not take that into consideration as to whether or not he had specific intent? You could certainly take that into account, but again, it's did the defendant have the intent to go through with that. If we had suggested the national park and the defendant said, I don't want anything to do with that, then he wouldn't have had the intent. And ultimately, it's a factual issue. And the analogy that I think of, Your Honor, is if an individual says, Boy, I really need to make some money. I need to hit a lick. I need to rob someone. I need to get some money quick. And an informant tells the police, and the police send him back and say, How about that bank at the corner? And the guy says, Yeah, that's great. Let's go with it. Arguably, it's no different than this. Perhaps the federal jurisdictional element has been suggested, but the defendant was ready, willing, and able to go along with it. But we're not talking about entrapment, so we're not looking at a question of whether he had the proclivity and the government just gave him the opportunity. That's not the defense here. The question is, how much of this was really this kid? And even if we were to agree with you on intent, how much of the necessary substantial steps towards actually executing this plan was this kid? So two different – I feel like you're asking me two different things, Your Honor. Good for you. You figured it out. And I've already forgotten them both, so let me do my best to address them one at a time. As far as how much of it was the government versus how much of it was this kid, ultimately, I don't think that weighs into it, because even if he didn't know – let's say he had committed this, but didn't know he was in a federal park and didn't know that these were federal officers that he was kidnapping, that wouldn't matter. Well, I'm also concerned, though, about the actual steps that he took to accomplish the kidnapping, if, indeed, he intended a kidnapping. Because as I read this record, it did seem like about the only thing he really did – I mean, he talked a big fight, but the only thing he really did was to go along with these government people on all the stuff that they set up. I believe it went further than that, Your Honor. Okay, show me where. Certainly, Your Honor. If you look at the exhibits dealing with when he went out to the location on, I believe it was May 6th, and it generally exhibits 225 through 229 in that area. The defendant just didn't go there and go along for the ride. Once the defendant got there, he described the location as being perfect, and then went even further and said, we'll put a sniper up there, we'll put a lookout there. It's very similar to the conduct that this court, in the Wesley case, said was sufficient to constitute a substantial step towards committing the crime. In that case, the crime certainly wasn't underway. Wesley had talked to someone, discussed the idea of doing it. There was no date set for the robbery. He still needed to recruit more accomplices. All the defendant did in Wesley was drive to the bank, look through the window, drive around it a couple times and plan a getaway route, and drove away and back to his house. In fact, in follow-up conversations in Wesley, the defendant made it sound like he wasn't sure he would go with it, he would go through with it. This court, nevertheless, held that just going to the location was enough, and surveying it and looking at it was sufficient to constitute a substantial step. Wesley, was anybody else intimately involved in taking any of those steps? The individual who drove him to that location was a government informant, and she was wearing a recording device during it. So I don't think it's too dissimilar from the informants in this case. The defendant goes further than Mr. Wesley did, however, because when he got to that location, he approved it, said it was perfect, and started planning where people would stand, where people would be stationed, and started to somewhat modify his plan to meet this location. Yes, the government suggested this location, but they did so based on the defendant's initial description in his plans to lure police out to a remote location. So we believe that he both had the intent to commit the crime, and he took substantial steps in furtherance of it. Responding to Mr. Sweeney's points that the seizure can't be incidental to holding, as Judge Bush pointed out, that simply disregards the Smalls case, which this court decided last year. In Smalls, the victim was tied up for 20 to 25 minutes while the defendants robbed and ransacked her house, and then drove away in a car, and I believe that's what got it charged as a Hobbs Act robbery. That essentially was what the defendant was planning to do here. He was planning to stop the officers at gunpoint, detain them against their will, which is holding. They would have been held for an appreciable period of time, satisfying the definition of holding from Chatwin, while they were stripped of their armor, stripped of their gear, while their cars were disabled. So I really think there's no way to distinguish Smalls other than the fact that the FBI stopped this one before it happened, whereas Smalls was something that happened after the fact. And the defendant didn't need to have the specific intent to know that what he was going to do was kidnapping. That's never been required for a kidnapping case. Kidnapping is a general intent crime. As long as the defendant knowingly commits acts, which, if completed, would constitute kidnapping, he's committed the crime. And we cite a number of cases in our brief that stand for that position. I don't have the names at the top of my head. And that's what the defendant was describing he wanted to do. As I went through with Judge Batchelder at the beginning of my argument, the defendant wanted to lure, inveigle, or decoy these officers out to this location, hold them, point a gun at them, make them surrender. If they didn't surrender, he spoke his intent to put one in their brain to make the next one surrender. At times he said he wanted to keep one alive because he wanted to send a message. He wanted to do something to gain notoriety and have that cop tell others that the Spartans, this militia group he was trying to start, was out there attacking and killing police officers. So we believe that the defendant specifically stated his intent to commit acts, which if completed, would have been kidnapping. Mr. Sweeney suggests that this was merely a young person who was manipulated by FBI sources. As you look back through the exhibits of the recordings of the sources interacting with the defendant, I did that last night. I didn't really listen, but I read through the transcripts. I was struck by what the sources said. It was a combination of yeah, all right, okay, mm-hmm. Words to that effect. They didn't suggest the plan. The defendant came up with the plan himself. You see that in his early postings on the Discord message group long before Guinness was ever introduced in them. He asked on April 2nd of 20, if anyone knew where we can find feds pulling cops and hit them. Government Exhibit 104. April 7th, we do a first small claim with cops, leaving a calling card, and when the media gets a hold, it will spread like wildfire. Exhibit 105. And then the first statement of the plan didn't come from either of the sources. It came from the defendant. Mainly this is a plan. We call a patrol car out to an open location. When he comes to the location, we ambush and subdue him. Government Exhibit 121. So we believe that this plan fully came from the defendant himself. And the FBI did what they should do when confronted with evidence of this. If it had been just the plan without any of the acts that the government agents did initiate, would that have been enough? No. I think there needed to be more evidence of the defendant taking a substantial step. Because it seems like what you've just described is pretty much planning. That is all planning, Your Honor. And it goes to show that this plan came from the defendant and he had the intent to do it. I'm not worrying about the intent at this point. I'm trying to figure out, beyond planning, what did the defendant have to do to constitute a substantial step, and what did he do that, in your mind, is that substantial step? He did several things, Your Honor. Number one, he acquired the gear and ammunition. He had an AR-15 rifle, 200 rounds of ammunition, magazines, tactical gear, a helmet, manual on guerrilla warfare. If acquiring that stuff isn't enough, the defendant took several further steps. He drew out the plan, described it to other people. Then, when they gave him a location that met his needs, he went out to that location, surveilled it, described it as perfect, and started pointing out watch points and surveillance points and locations where he wanted to station other people who were going to participate in this plan with him. It doesn't matter, though, that none of that specific stuff would have happened but for the agents being the ones who figured out the location, told him about it, took him there? I don't think it does, Your Honor, because in any sting, which the government is free to do under the number of cases that we cited in our brief, including Pinnell, Ambrose, I'm sorry, those are entrapment cases. I don't have those case names committed to me. But this is what a government can do in a sting, and if the defendant takes steps in response to those activities, that constitutes a substantial step. The defendant didn't have to go. He didn't have to approve those locations. And in fact, before they went to the location, one of the sources said to him, all right, it's getting serious now. If anyone wants to back out, now is the time. The defendant was gung ho. I'm in. Let's do it. Words to that effect. I'm in. I want to go forward with this. Let me ask you about the Wesley case, and I just don't remember the facts as well as I should.  The confidential informant was driving the defendant, and if I recall correctly, may have known someone or had a relative who worked at the bank and provided information to the defendant regarding the bank. Did the CI give the idea for which bank they would go to? No, the CI did not in Wesley. So they drove the person around at a bank that, I guess, the defendant wanted to rob or decided to rob. Yes. Okay. As additional activities that the defendant undertook, you mentioned that he acquired the gear and had these AR-15s, and this could just be a part of my recollection. Is there evidence in the record as to when he did take those steps, when he did obtain that gear? Do we know that that was in response to his plan or in response to anything that the undercovers told him or the informants told him? We do not know specifically when he acquired the AR-15 and the ammunition. We do know from several other conversations and messages he exchanged with individuals that he was also trying to acquire a handgun but had not yet done it. Based on the evidence as a whole, though, we believe that there was sufficient evidence of the defendant's specific intent to kidnap law enforcement officers. He took substantial steps in preparation of it, or in furtherance of it, and therefore we ask this Court to affirm his convictions. Thank you. Thank you, Mr. Smith. Or Mr. Call, excuse me. That's okay. You have rebuttal. Thank you, Your Honor. Yes, I do. I think it again comes down to, I think Judge Batchelder's questions were right there. I mean, what really did he do that shows a substantial step? Because really, I think all you really end up with, what I heard Matt say, is basically he proved this location. He said, yeah, it's a good location. This looks good to me. But that's not a substantial step. That's just more planning. And plus, remember, the crime here is attempted kidnapping. Approving a location that would be used for a robbery of police gear isn't proof of a substantial step being taken to commit the very different offense of a kidnapping. That's really, I think, where the government kind of is missing the boat here. They may have been able to prove an attempted robbery, I guess you can't have a conspiracy, but some sort of robbery crime. But there's just no evidence and no proof of a substantial step by this young man, this young kid, to commit the offense of kidnapping, which is a very different and very serious offense. It's a life sentence offense if you're guilty of that offense. And the court is clear, the Chatwin Court, immoralities lacking the characteristics of true kidnappings don't count. They shouldn't be brought within the scope of kidnappings. This wasn't a kidnapping. This kid wasn't, even if you take all the steps that the government argues were substantial, none of them are steps toward committing that offense. Because that's the offense they have to prove, not some different offense that might have, depending on how you speculate it would be conducted, might involve a kidnapping. Because that two-minute holding isn't one, even if the 25-minute holding in Smalls is. There's no proof he took a substantial step to ever commit a 25-minute holding of anyone. Nor, I believe, was there an intent to do that. But even if you're past that and you're thinking, well, what step did he take? I just don't see it here on this evidence. And that's where I think this case, it breaks apart. And I think if you look at it fairly and step back away from it in the emotion of any case, I think you'd probably come away with it the same way the jury did, which was, come on. And remember what this jury did. This is the jury that wrote the note to the kid at the end. They wrote a note. Have you ever seen that? Where a jury asked a judge, can we write a note to the kid? And they write a note and they said, hey, we think you're a good kid. Don't let this define you. I think this jury wanted to acquit, but they didn't because they felt like this was something wrong here. But he didn't commit the crime he was charged with. That's what sufficiency review is for. And I think, respectfully, Your Honors, this conviction should be reversed and this young man should be discharged. Thank you, Mr. Sweeney. And thank you for representing Mr. Ferguson's CJA appointment. Thanks to both counsel. We'll take the case under submission.